# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kristin H.,

        Plaintiff,

     v.

Martin J. O'Malley,
  Commissioner of Social Security,

        Defendant.

No. 20 CV 6362

Magistrate Judge McShain

## Memorandum Opinion and Order

Plaintiff Kristin H. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application on behalf of J.J., a minor, for benefits. For the following reasons, plaintiff's motion for summary remand [19][1] is denied, the Commissioner of Social Security's motion for summary judgment [26] is granted, and the decision denying plaintiff's application is affirmed.

## Background

### A.    Procedural Background

In May 2016, plaintiff filed an application for supplemental security income on behalf of her minor son J.J., who was born in July 2015, alleging a disability onset date of January 1, 2016. [17-1] 98. The claim was denied initially and on reconsideration. [Id.]. In December 2017, an administrative law judge (ALJ) denied the application. [Id.] 98-113. In July 2019, the Appeals Council vacated the decision and remanded for further proceedings. [Id.] 120-21. On remand, a new ALJ held a hearing in November 2019 and issued a written decision on January 16, 2020 finding that J.J. was not disabled. [Id.] 15-25. The Appeals Council denied further review in August 2020 [id.] 1-6, making the ALJ's decision the agency's final decision. See 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [17], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [10].

### B.  ALJ's Decision

The ALJ reviewed J.J.'s disability claim in accordance with the SSA's three-step sequential-evaluation process for evaluating whether a claimant under the age of 18 is disabled. At step one of her decision, the ALJ found that J.J. was not engaged in substantial gainful activity. [17-1] 16. At step two, the ALJ determined that J.J. suffered from the following severe impairments: right eye congenital ptosis defects with deprivational amblyopia and deprivational sensory exotropia status post-surgery and speech/language delay. [*Id.*]. At step three, the ALJ ruled that J.J.'s impairments did not meet, medically equal, or functionally equal the severity of a listed impairment. [*Id.*] 17-25. The ALJ therefore found that J.J. was not disabled.

### Legal Standard

Children are considered disabled under the Social Security Act if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any "substantial gainful activity," 20 C.F.R. § 416.924(b); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe," 20 C.F.R. § 416.924(c); and (3) the impairment or impairments must meet, medically equal, or functionally equal the severity of one of the listings in the Social Security regulations, 20 C.F.R. § 416.924(d). Thus, the disability analysis for children is not work-focused (as it is for adults), and the relevant question is "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them." *McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021).

If an impairment does not meet or medically equal a listing, the ALJ considers six domains of functioning to evaluate whether an impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). These domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id.* To functionally equal a listing, the impairment must produce a "marked" limitation in at least two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The ALJ must consider the combined effect of all medically determinable impairments, even if a given impairment is not, on its own, severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a), & 416.926a(c). "If a child meets the above requirements–in other words, does not engage in substantial gainful activity and has a severe impairment that meets, medically equals, or functionally equals a listing–the child will be found disabled." *Seth W. o/b/o N.D. v. Kijakazi*, No. 21 CV 37, 2023 WL 2646737, at *1 (N.D. Ill. Mar. 27, 2023).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

### I.    J.J.'s Developmental Delay

Plaintiff first argues that the ALJ should have found that J.J. suffered from an additional severe impairment: developmental delay. [19] 10-11. Plaintiff contends that the ALJ failed to account for J.J.'s hyperactivity and uncooperative behaviors because, in her view, they were not linked to a "medically established diagnosis." [*Id.*] 11. Had the ALJ recognized that J.J.'s behavioral issues were caused by his diagnosed developmental delay, plaintiff maintains, the ALJ likely would have found that J.J. had marked or extreme functional limitations. *See* [*id.*] 11-14.

"[A]t step two of the sequential analysis," the ALJ determines "whether the claimant in fact has an impairment or combination of impairments that is 'severe.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). "A severe impairment is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities." *Id.* (internal quotation marks and brackets omitted). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Id.* at 926-27 "[T]he step two determination of severity is merely a threshold requirement." *Id.* (internal quotation marks omitted). "Accordingly, if an ALJ determines there exists at least one severe impairment, there technically is no legal error at step two." *Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *6 (N.D. Ill. Sept. 20, 2021) (internal quotation marks omitted).

Here, the ALJ found that plaintiff suffered from two severe impairments and continued with the three-step analysis for evaluating a child's disability claim. [17-1] 16. Therefore, any failure by the ALJ to determine that plaintiff's developmental delay was a severe impairment did not amount to a legal error. *See Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015) (ALJ's finding that plaintiff had at least one severe impairment represents "as favorable a determination as can be made" at step two); *see also Frank R.*, 2021 WL 4264386, at *7 (no legal error occurred where ALJ ruled that plaintiff's degenerative disc disease and obesity were severe impairments but found that knee impairment was non-severe).

To be sure, an ALJ must consider all of a claimant's impairments–including those that the ALJ deems non-severe–when making a functional-equivalence determination. *Cf. Curvin*, 778 F.3d at 649. And the Court recognizes that "an ALJ's failure to address impairments at step two can be a harbinger of errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe" cause functional limitations. *Leslie T. v. Saul*, Case No. 4:19-cv-113-SEB-DML, 2020 WL 6586658, at *3 (S.D. Ind. Oct. 19, 2019). But there is no merit to plaintiff's argument that the ALJ's failure to find that J.J.'s diagnosed developmental delay was a severe impairment caused the ALJ to overlook or understate J.J.'s behavioral issues or any other functional limitations.

Plaintiff contends that the ALJ's finding that J.J. had not been diagnosed with a behavioral, emotional, or psychological condition was "factually wrong" because J.J.'s pediatrician diagnosed him with a developmental delay in 2017. [19] 11. Although the pediatrician, Dr. Omprakash Sawlani, did diagnose J.J. with a "developmental delay," *see* [17-1] 548, Dr. Sawlani did not elaborate on this diagnosis or explain whether the developmental delay caused behavioral issues or other functional limitations. *See* [*id.*]. Nor does the record contain an opinion from Dr. Sawlani in which Sawlani linked the developmental delay to a specific behavioral, emotional, or psychological limitation. Accordingly, there is nothing inconsistent between Dr. Sawlani's entirely unexplained diagnosis of "developmental delay," and the ALJ's finding that J.J. did not have a behavioral, emotional, or psychological condition. In attempting to prove that J.J.'s developmental delay caused behavioral or other functional limitations that the ALJ supposedly failed to consider, moreover, plaintiff relies exclusively on a WebMD article that provides a general overview of developmental delays. *See* [19] 11. "Because plaintiff has not identified any objective medical evidence or opinion testimony" to support her argument that J.J.'s developmental delay caused behavioral issues or other functional limitations, "the Court cannot fill this hole in the record by using [a] website[ ] chosen by plaintiff" to find that this developmental delay caused additional functional limitations. *Frank R.*, 2021 WL 4264386, at *13; *see also Scheck v. Berryhill*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). For these reasons, the Court rejects plaintiff's argument that the ALJ's decision that J.J. did not have a behavioral, emotional, or psychological disorder was factually unsupported.

Furthermore, the ALJ's decision refutes plaintiff's argument that the ALJ "refused to consider" [19] 11, the evidence of J.J.'s behavioral issues. The ALJ recognized plaintiff's claim that J.J. experienced "extreme behavioral difficulties" [17-1] 22, but–in addition to finding (accurately) that J.J. had not been diagnosed with a behavioral, emotional, or psychological condition–determined that the record was inconsistent with the degree of behavioral difficulties alleged by plaintiff. For example, in discussing J.J.'s ability to attend to and complete tasks, the ALJ considered, *inter alia*, (1) J.J.'s uncooperative behavior during certain exams and his

difficulties complying with eye-patching treatment, (2) evidence that J.J. exhibited delays in social/emotional development and exhibited aggressive behavior during an October 2017 evaluation, and (3) J.J.'s difficulties paying attention and tendency to get distracted during a July 2019 occupational therapy evaluation. *See* [*id.*] 22. At the same time, the ALJ found that J.J. showed "some improvement" in this domain. [*Id.*]. During an October 2017 evaluation, J.J. "engaged with the testing materials, but chose to direct himself." [*Id.*]. During a July 2019 evaluation, J.J. was able to "follow one- and two-step directions and accept changes in routine" while also "respond[ing] to motivators and first-then strategies." [*Id.*]. During the October 2019 evaluation, moreover, J.J.'s team "noted maladaptive behavior only one to five times weekly from 10-45 minutes at a time." [*Id.*]. The ALJ also observed that J.J. and his family "were living in homeless shelters with no stable place to live" for "a significant period," and that much of J.J.'s uncooperative behavior could be attributed to the fact that he "was still only an infant or toddler[.]" [*Id.*]. Having considered evidence on both sides of the question, the ALJ determined that, "[w]hile some inattention issues have been noted and observed by various professionals and in the hearing, the level of inattention and aggression reported by [plaintiff] have not been documented by any physician or in observations by various professionals." [*Id.*]. This determination was substantially supported by the evidence, and plaintiff has not shown that the ALJ ignored or understated contrary lines of evidence respecting J.J.'s behavioral limitations.

Plaintiff's argument that the ALJ's supposed step-two error affected her evaluation of J.J.'s other functional domains is likewise meritless. Plaintiff contends that the ALJ "failed to discuss any evidence of extreme behavior issues" respecting his ability to interact with and relate to others, including evidence that J.J. hit and bit others, "lack of cooperation with examinations and patching," and an "initial 44-percent delay in social/emotional development" during an October 2017 evaluation. [19] 13. While the ALJ did not specifically discuss the evidence of J.J. hitting and biting others, the ALJ was not required to "discuss every snippet of information from the medical records" that is arguably contrary to her ruling. *Nicholas C. v. Kijakazi*, No. 21 C 244, 2023 WL 6160160, at *3 (N.D. Ill. Sept. 21, 2023). What the ALJ may not do is "ignore an entire line of contrary evidence." *Ferida H.M. v. O'Malley*, No. 22 C 6341, 2024 WL 942552, at *4 (N.D. Ill. Mar. 5, 2024). Here the ALJ recognized that J.J. behaved aggressively with others, *see* [17-1] 22 (noting that J.J. "screamed when his eye surgeon attempted to assess his vision during his postsurgical appointment"), but also that he "respond[ed] to others via verbal communication skills" and "engage[d] in interaction with family and others." [17-1] 23 (citing [*id.*] 510). Moreover, and contrary to plaintiff's argument, the ALJ discussed the evidence of J.J.'s difficulties complying with eye-patching treatment in detail while evaluating J.J.'s health and physical well-being. *See* [*id.*] 19-20. Finally, the ALJ previously recognized that J.J. had been "assessed at being at the 15-month level, or 44% delay, despite being 27 months old" earlier in the decision. [17-1] (citing [*id.*] 22). Because the ALJ did not simply "discuss[ ] only less-abnormal findings under this domain," [19] 13, as plaintiff erroneously claims, the Court rejects this argument.

Finally, plaintiff faults the ALJ for "not consider[ing] J.J.'s treatment cooperation problems or lack of patching *at all* in discussing the domain of caring for himself." [19] 13. As noted above, however, the ALJ provided a detailed overview of this evidence when she evaluated J.J.'s health and physical well-being. *See* [17-1] 19-20. After doing so, the ALJ found that, while J.J.'s "treating physicians have noted that [he] is occasionally cooperative during eye appointments, and he has been very noncompliant with wearing his prescribed patch," during most of these appointments J.J. was "still only an infant or toddler and many of these appointments involved touching [his] eyelid." [*Id.*] 20. Continuing to discuss J.J.'s ability to care for himself, the ALJ observed that (1) J.J. was able to make his needs known, (2) his behavior improved during therapy sessions at Easter Seals, (3) J.J. was no longer a picky eater at age four and was toilet-trained during the day, and (4) J.J. had "generally showed improvement" in this area of functioning. [*Id.*] 23-24. Plaintiff does not dispute these findings or cite other lines of evidence that the ALJ failed to address. The Court therefore has no basis to find that this part of the ALJ's decision lacks a substantial basis in the evidence.

For these reasons, the Court finds that no error occurred at step two of the sequential analysis, and that plaintiff has not shown that the ALJ overlooked or failed to consider an entire line of evidence respecting J.J.'s functional limitations.

## II.    Closed Period of Disability

Plaintiff also argues that the ALJ erred in failing to consider whether J.J.'s vision impairment "qualified for a 'closed period'" of disability "prior to its improvement at age four," when J.J.'s vision improved to a right visual acuity of 20/50 with corrective lenses in October 2019. [19] 14. Plaintiff contends that the ALJ "did not discuss any of th[e] evidence" before 2019, when J.J.'s visual acuity measured between 20/400 and 20/1000, he was sensitive to light, he often had his chin up or tilted, and he was uncooperative with examinations and patching. [*Id.*].

"A claimant need not be disabled as of the date of the hearing or of the ALJ's decision in order to qualify for disability benefits." *Kuhn v. Comm'r of Soc. Sec.*, Cause No. 1:20-cv-452-SLC, 2022 WL 110238, at *5 (N.D. Ind. Jan. 12, 2022) (internal quotation marks omitted). "Rather, a claimant is entitled to disability benefits if they were disabled for any continuous period of at least 12 months." *Id.* (internal quotation marks omitted). "Therefore, even if an ALJ finds that a claimant is not disabled as of the date of the decision, [she] must still consider whether the claimant was [disabled] for any continuous period of at least 12 months since the alleged onset date." *Id.* (internal quotation marks omitted).

Plaintiff has not shown that the ALJ erred by omitting from her decision a specific discussion of whether J.J. was entitled to a closed period of disability.

6

First, plaintiff's pre-hearing brief at the administrative level did not ask the ALJ to consider a closed period of disability based on J.J.'s visual impairment. *See* [17-1] 357-58. Nor did plaintiff, who was represented by counsel during administrative proceedings, suggest at the hearing that the ALJ consider a closed period of disability based on J.J.'s visual impairment. *See* [*id.*] 55-75; *see also Michael P. v. Saul*, Case No. 1:19-cv-3382-TWP-TAB, 2020 WL 6063839, at *8 (S.D. Ind. Oct. 14, 2020) (ALJ's failure to consider closed period of disability not reversible error where, *inter alia*, "neither Michael P. nor his hearing representative asserted that Michael P. was seeking a closed period"). Similarly, plaintiff's brief in this Court does not identify a specific twelve-month period in which the ALJ should have found that J.J. was disabled by virtue of his visual impairment. *See* [19] 14-15. Plaintiff vaguely suggests, in an argument that is so perfunctory and undeveloped as to constitute a forfeiture, that a closed period of disability was warranted sometime in the nearly three-and-a-half years between May 2016 and October 2019. *Accord Abigail C. v. Kijakazi*, Case No. 3:22-cv-50172, 2023 WL 3585760, at *2 (N.D. Ill. May 22, 2023) ("parties forfeit arguments that are perfunctory, undeveloped, and unsupported by pertinent authority"). Plaintiff also failed to file a reply brief even though the Commissioner's brief highlighted the fact that this claim depends on an "*unspecified* closed disability period." [26] 9 (emphasis added). Forfeiture aside, the Court cannot fault the ALJ for not specifically discussing a closed period of disability when plaintiff–despite having multiple opportunities to do so–has not identified a specific twelve-month period during which J.J. was allegedly disabled. *See Combs v. Kijakazi*, 69 F.4th 428, 437 (7th Cir. 2023) (rejecting argument that ALJ failed to consider closed period of disability in case where plaintiff "struggled to identify consistent dates to bookend the proposed closed period" and observing that "[w]e cannot fault the ALJ for failing to consider a closed period that Ms. Combs herself has had difficulty identifying"); *Isaac B. v. Kijakazi*, No. 20 C 5727, 2023 WL 5486930, at *5 (N.D. Ill. Aug. 24, 2023) (rejecting claim that ALJ failed to consider closed period of disability where, *inter alia*, "Plaintiff[ ] fail[ed] to designate a 12-month period" that ALJ should have addressed); *Standke v. Kijakazi*, Case No. 22-C-1108, 2023 WL 6520719, at *13 (E.D. Wis. Jun. 6, 2023) (rejecting argument that ALJ should have considered closed period of disability where "plaintiff does not identify any other period the ALJ should have considered, nor does she explain how the ALJ should have marked this period"); *Roberson v. Saul*, Case No. 19-CV-389-JPG-MAB, 2020 WL 3077227, at *5 (S.D. Ill. Jun. 10, 2020) (rejecting argument that ALJ failed to consider whether plaintiff was disabled for closed period between January 2015 and August 2016 because "nothing in the record suggests that Roberson sought benefits for a closed period of disability").

Second, the factual premise of plaintiff's argument–that the ALJ focused solely on the evidence from 2019 showing that J.J.'s vision impairment had improved in finding less than marked limitations–is simply not accurate. In evaluating the evidence of J.J.'s health and well-being, for example, the ALJ discussed a good deal of pre-2019 evidence that was inconsistent with plaintiff's claim that J.J.'s visual

impairment was disabling.[3] The ALJ observed that (1) J.J.s developmental screening in May 2016 was within normal limits; (2) J.J.'s eye surgeon opined in May 2017 that J.J. was meeting developmental milestones; (3) plaintiff reported in September 2017 that J.J.'s vision seemed to be better; (4) by July 2018, J.J. was wearing glasses full-time and allowing patching for an hour per day; (5) J.J. allowed some "minimal eye testing and was able to identify some shapes, with corrected vision at 20/400 on the right side and 20/30 on the left"; and (6) J.J.'s ophthalmologist observed in September 2017 that J.J.'s vision was "best corrected to 20/70 on the right and 20/25 on the left" and that his "eye appearance had improved since the last visit[.]" [17-1] 19-21. At the same time–and in complete contradiction to plaintiff's argument–the ALJ did consider the pre-2019 evidence that J.J.'s visual impairment caused significant issues for J.J., including (1) evidence that "J.J. was very sensitive to light," (2) evidence that J.J. "ke[pt] his chin up," turn[ed] his head to the right," and "was consistently using a tilted chin posture to see," (3) evidence that J.J.'s visual acuity in 2017 was only 20/960 on the right, and (4) evidence of J.J.'s difficulties during examinations and in complying with eye-patching treatment. [*Id.*] 19-20.[4]

The Court concludes that "the ALJ's discussion of evidence was not limited to [J.J.'s] current functioning at or around the time of the hearing," or limited only to the evidence of improvements in J.J.'s condition in October 2019, when his visual acuity on the right improved to 20/50. *Michael P.*, 2020 WL 6063839, at *8. Instead, the ALJ's discussion, which also encompassed "the evidence of severity of [J.J's] impairments around the time of his alleged onset," demonstrates that the ALJ considered the evidence longitudinally and found that J.J.'s limitations, though significant, were less than marked. *Id.* Indeed, the ALJ expressly found that J.J. "has

---

[3] To the extent that plaintiff argues that the ALJ's decision on this score was deficient because it merely "summarized" the medical evidence, the Court rejects that argument. *See Warnell v. O'Malley*, No. 23-1632, --- F.4th ----, 2024 WL 1503808, at *3 (7th Cir. Apr. 8, 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("And if [claimant] is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective.").

[4] In another undeveloped argument, plaintiff contends that "the ALJ's references to noncompliance with patching and exams do not excuse her failure to assess J.J.'s claim for a closed period. As discussed above, the ALJ failed to apply the agency's noncompliance policy." [19] 15 (citing Social Security Ruling 16-3p, 2017 WL 5180304, at *9-10). Plaintiff does not explain what SSR 16-3p, which describes when an ALJ may discount a claimant's statements about the severity of his symptoms if the claimant has not complied with prescribed treatments, has to do with the ALJ's evaluation of how J.J.'s patching difficulties affected his health and well-being or ability to care for himself. Because there is simply no way to read the ALJ's decision as suggesting that the ALJ discredited plaintiff's allegations or understated J.J.'s limitations because J.J. had trouble complying with eye-patching, the Court finds that SSR 16-3p is not relevant in this case.

not been disabled, as defined in the Social Security Act, since May 5, 2016, the date the application was filed." [17-1] 25. "As such, it can be inferred that the ALJ considered [J.J.'s] functioning throughout the period of review," and the ALJ did not err by omitting a specific discussion of a closed period of disability (which plaintiff has never identified) from her decision. *Id.*; *accord Isaac B.*, 2023 WL 5486930, at *5 (rejecting argument that ALJ failed to consider closed disability period where "the ALJ addressed and acknowledged the occasions where a deficit was noted in Plaintiff's left arm but also the occasions of observations of normal muscle strength, symmetry, and tone in both of plaintiff's arms"); *Jennifer L.G. v. Comm'r of Soc. Sec.*, Civil No. 19-cv-545-DGW, 2020 WL 832975, at *6 (S.D. Ill. Feb. 20, 2020) (rejecting "undeveloped argument" that ALJ failed to consider closed disability period because "there is no reason to think that the ALJ failed to consider this issue. He referred to the 12-month durational requirement and stated that plaintiff has not been under a disability within the meaning of the Social Security Act since the alleged onset date.") (internal quotation marks omitted).

## Conclusion

For the foregoing reasons, plaintiff's motion for summary remand [19] is denied, the Commissioner of Social Security's motion for summary judgment [26] is granted, and the decision denying plaintiff's application is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: April 18, 2024**